## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DAT-A-SYST, LLC, Individually and On Behalf of
All Others Similarly Situated,

                            Plaintiff,

        v.

DENSO CORPORATION, DENSO
INTERNATIONAL AMERICA, INC.,
PANASONIC CORP., PANASONIC
CORPORATION OF NORTH AMERICA,
STANLEY ELECTRIC CO., LTD., STANLEY
ELECTRIC U.S. CO., INC., II STANLEY CO.,
INC., KOITO MANUFACTURING CO. LTD.,
NORTH AMERICAN LIGHTING, INC.,
MITSUBISHI ELECTRIC CORPORATION,
MITSUBISHI ELECTRIC US HOLDINGS, INC.,
and MITSUBISHI ELECTRIC AUTOMOTIVE
AMERICA, INC.

                            Defendants.

Case No. _____

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

       Plaintiff DAT-A-SYST, LLC, individually and on behalf of the class of direct purchasers

described below, brings this action against Defendants for damages and injunctive relief under

the antitrust laws of the United States and upon information and belief, hereby alleges as follows:

## SUMMARY OF THE CASE

       1.        Defendants are manufacturers and suppliers of automotive high intensity

discharge ballasts ("HID Ballasts"), as defined in this Complaint, sold in the United States.

Plaintiff alleges that Defendants engaged in a global conspiracy that effectively operated to

artificially inflate, fix, raise, maintain, or stabilize prices of HID Ballasts sold in the United

States from July 1, 1998 through the present.  Plaintiff further alleges that it could not have discovered, and did not discover, Defendants' conspiracy at a time earlier than July 18, 2013, and that Defendants fraudulently concealed their conspiracy.

2.      Plaintiff brings this lawsuit as a class action on behalf of direct purchasers who, during the Class Period, purchased HID Ballasts in the United States from one or more of Defendants or their co-conspirators.

3.      This action is brought under Section 1 of the Sherman Act to enjoin Defendants' anticompetitive conduct and recover damages suffered by the Class.  Because of Defendants' unlawful conduct, HID Ballasts purchasers paid higher prices for HID Ballasts than they would have paid in a competitive market, and therefore have suffered injury to their business or property.

## JURISDICTION AND VENUE

4.      Plaintiff brings this action to obtain injunctive relief and to recover damages, including treble damages, and costs of suit and reasonable attorneys' fees, resulting from Defendants' violations of the Sherman Act, 15 U.S.C. § 1.

5.      The Court has jurisdiction over the subject matter of this action pursuant to Sections 4(a) and 16 of the Clayton Act, 15 U.S.C. § 15 and 26, and 28 U.S.C. § 1331 and 1337. Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c) and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District.

6.      This Court has personal jurisdiction over each of Defendants because each Defendant, either directly or through the ownership or control of its United States subsidiaries:

(a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of HID Ballasts throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) was engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, and reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District.  Defendants conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

7.      Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

8.      Because of their nationwide contacts and activities, Defendants are subject to the jurisdiction of this Court.  Alternatively, there is jurisdiction over foreign Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

## DEFINITIONS

9.      The term "Class Period," as used in this complaint, refers to the time-period from July 1, 1998 through the present, or until the anticompetitive effects of Defendants' behavior ceased, as this Court shall determine.

10.      The term "HID Ballasts," as used in this complaint, refers to electrical devices that "limit[] the amount of electrical current flowing to an HID headlamp, which would otherwise rise to destructive levels due to the HID headlamp's resistance."   Panasonic Information, p. 11, ¶ 25 (see below, ¶ 55.)

11. The term "Defendant" or "Defendants," as used in this complaint, refers to, in addition to those named specifically below, the named Defendants' predecessors, including HID Ballast manufacturers merged with or acquired by the named Defendants, and each named Defendant's subsidiaries, affiliates, joint ventures or agents that sold HID Ballasts directly to purchasers in the United States during the Class Period.

12. References made herein to any corporate entity include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of that entity.

## TRADE AND COMMERCE

13. During the Class Period, each Defendant sold HID Ballasts in the United States in a continuous and uninterrupted flow of interstate commerce.

14. The business activities of Defendants substantially affected interstate trade and commerce in the United States.

## PARTIES

### Plaintiff

15. Plaintiff DAT-A-SYST, LLC, doing business as BrightHeadlights-HID.com and BrightHeadlights.com is a South Carolina limited liability corporation with its principal place of business in Fort Mill, South Carolina. DAT-A-SYST, LLC is, among other things, an original equipment manufacturer of motor vehicle lighting assemblies and systems. Plaintiff purchased HID Ballasts directly from one or more of Defendants or their co-conspirators during the Class Period.

### Defendants

16. Defendant Denso Corporation is a Japanese corporation with its principal place of business in Kariya, Japan. Denso Corporation – directly and/or through its subsidiaries,

which it wholly-owned and/or controlled – manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the class period.

17.     Defendant Denso International America, Inc. is a Delaware corporation with its principal place of business in Southfield, Michigan.  It is a subsidiary of and wholly-owned and/or controlled by its parent, Denso Corporation.  Denso International America, Inc. – directly and/or through its subsidiaries, which it wholly-owned and/or controlled – manufactured, marketed, and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period.  According to Denso Corporation's website, Denso International America, Inc. is "Denso's North American regional headquarters and parent company for its North American operations, original equipment (OE) sales, product engineering and technical support to OE sales and finance."  Defendants Denso Corporation and Denso International America, Inc. are referred to collectively herein as "Denso".

18.     Defendant Panasonic Corporation ("Panasonic"), is a Japanese corporation with its principal place of business in Osaka, Japan.  Defendant Panasonic – directly or through its subsidiaries in the United States and elsewhere, which it wholly-owned and/or controlled – manufactured, marketed, and/or sold HID Ballasts in the United States, including in this District, during the Class Period.

19.     Defendant Panasonic Corporation of North America is a Delaware corporation with its principal place of business in Newark, New Jersey.  It is a subsidiary of and wholly-owned and/or controlled by its Japanese parent, Panasonic Corporation.  Panasonic Corporation of North America manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period.  Specifically,

Panasonic Automotive Systems Company of America, a registered assumed name of Panasonic Corporation of North America, is a division of Panasonic Corporation of North America and supplies automotive parts, including HID Ballasts, to the North America automotive industry. Panasonic Automotive Systems Company of America is headquartered in Peachtree City, Georgia, and has its main sales office in Farmington Hills, Michigan.  Panasonic Corporation, Panasonic Corporation of North America, and Panasonic Automotive Systems Company of America are referred to collectively herein as "Panasonic".

20.     Defendant Stanley Electric Co., Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Stanley Electric Co., Ltd – directly or through its subsidiaries in the United States and elsewhere, which it wholly-owned and/or controlled – manufactured, marketed, and/or sold HID Ballasts in the United States, including in this District, during the Class Period.

21.     Defendant Stanley Electric U.S. Co., Inc. is an Ohio corporation with its principal place of business in Ohio.  It is a subsidiary of and wholly-owned and/or controlled by its parent, Stanley Electric Co., Ltd.  Stanley Electric U.S. Co., Inc. manufactured, marketed, and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period.

22.     Defendant II Stanley Co., Inc. is a Michigan corporation with its principal place of business in Michigan.  It is a subsidiary of and wholly-owned and/or controlled by its parent, Stanley Electric Co., Ltd.  II Stanley Co., Inc. manufactured, marketed, and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period.  Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc. are referred to collectively herein as "Stanley".

6

23.     Defendant Koito Manufacturing Co. Ltd., is a Japanese corporation with its principal place of business in Tokyo, Japan.  Defendant Koito Manufacturing Co. Ltd. – directly or through its subsidiaries in the United States and elsewhere, which it wholly-owned or controlled – manufactured, marketed, or sold HID Ballasts in the United States, including in this District, during the Class Period.

24.     Defendant North American Lighting, Inc. is a Michigan corporation with its principal place of business in Illinois.  It is a subsidiary of and wholly-owned and/or controlled by its parent, Koito Manufacturing Co., Ltd.  North American Lighting, Inc. manufactured, marketed, and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period.  Koito Manufacturing Co., Ltd. and North American Lighting, Inc. are referred to collectively herein as "Koito".

25.     Defendant Mitsubishi Electric Corporation is a corporation organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan.  Mitsubishi Electric Corporation – directly or through its subsidiaries in the United States and elsewhere, which it wholly-owned or controlled – manufactured, marketed, and/or sold HID Ballasts in the United States, including in this District, during the Class Period.

26.     Defendant Mitsubishi Electric US Holdings, Inc., is a Delaware corporation with its principal place of business in Cypress, California.  It is a subsidiary of and wholly-owned and/or controlled by its parent, Mitsubishi Electric Corporation.  Mitsubishi Electric US Holdings, Inc. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period.

27.      Defendant Mitsubishi Electric Automotive America, Inc. is a Delaware corporation with its principal place of business in Mason, Ohio.  It is a subsidiary of and wholly-owned and/or controlled by its parent, Mitsubishi Electric US Holdings, Inc.     Mitsubishi Electric Automotive America, Inc. manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period. Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. are referred to collectively herein as "Mitsubishi".

28.      To the extent that subsidiaries, divisions, affiliates or joint ventures of Defendants sold HID Ballasts, these related entities played a material role in the conspiracy alleged in this complaint, because Defendants wished to ensure that the prices paid for such HID Ballasts would not undercut the artificially raised and inflated pricing that was the aim and intended result of Defendants' coordinated and collusive behavior as alleged herein.  Thus, all such entities were active, knowing participants in the conspiracy alleged herein, and their conduct in selling, pricing, distributing or collecting monies from the members of the Class was authorized, ordered, known to, and approved by their respective corporate parents named as Defendants in this complaint.

## **DEFENDANTS' CO-CONSPIRATORS AND AGENTS**

29.      The acts alleged in this complaint to have been done by Defendants were authorized, ordered, and condoned by their parent companies and the acts alleged to have been done by each Defendant were authorized, ordered, and performed by their officers, directors, agents, employees, or representatives while engaged in the management, direction, control, or transaction of their business affairs.

30.     Various persons or firms not named as Defendants have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof.   Defendants are jointly and severally liable for the acts of their co-conspirators regardless of whether the co-conspirators are named as Defendants in this Complaint.

31.     Each Defendant acted as the agent or joint venturer of or for other Defendants with respect to the acts, violations and common course of conduct alleged herein.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action both on behalf of itself and all other similarly situated individuals and entities (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), seeking equitable and injunctive relief, and treble damages.   The Class is defined as follows:

> All individuals and entities (excluding Defendants, and their present and former parents, subsidiaries and affiliates) that purchased HID Ballasts in the United States directly from one or more of Defendants or their co-conspirators from July 1, 1998 through the present.

33.     Plaintiff does not know the exact number of Class members, such information being in the exclusive control of Defendants.   Due to the nature of the trade and commerce involved, however, Plaintiff believes that the Class is so numerous and geographically dispersed throughout the United States that joinder of all Class members is impracticable.

34.     There are questions of law or fact common to the Class, including, but not limited to, the following:

a.     Whether Defendants engaged in a contract, combination, or conspiracy to fix, raise, maintain, or stabilize prices of HID Ballasts sold in the United States;

b.      The identity of the participants in the alleged conspiracy;

c.      The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

d.      Whether the alleged conspiracy violated Section 1 of the Sherman Act;

e.      Whether the contract, combination, or conspiracy caused HID Ballasts prices to be higher than they would have been in the absence of Defendants' and their co-conspirators' conduct;

f.      Whether the conduct of Defendants and their co-conspirators, as alleged in this complaint, caused injury to the business or property of the Class members;

g.      Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Class members;

h.      Whether the Class members are entitled to injunctive relief and, if so, the nature and extent of such relief; and

i.      The appropriate class-wide measure of damages.

35.     These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

36.     Plaintiff's claims are typical of the claims of the Class because Plaintiff is pursuing the claims of a direct purchaser of HID Ballasts from a Defendant, all Class members were damaged by the same conspiracy alleged herein, and the relief sought by the Plaintiff is common to the Class.

37.     Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff is pursuing the claims of a direct purchaser of HID Ballasts and has no conflict with any

other members of the Class.  Furthermore, Plaintiff has retained competent counsel experienced in antitrust, class action, and other complex litigation.

38.      Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

39.      A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.  Prosecution of this matter as a class action will eliminate the possibility of repetitive litigation, and there are no inherent barriers to managing the case as a class action.

40.      The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying outcomes.

41.      The Class is also readily definable and is one for which records likely exist in the files of Defendants.

## **INDUSTRY BACKGROUND**

### **The HID Ballasts Industry**

42.       High-intensity discharge lamps are a type of electrical gas-discharge lamp which produces light by means of an electric arc between two tungsten electrodes housed inside a translucent or transparent fused quartz or fused alumina arc tube.  This tube is filled with both gas and metal salts.  The gas facilitates the arc's initial strike.  Once the arc is started, it heats and evaporates the metal salts forming a plasma, which greatly increases the intensity of light produced by the arc and reduces its power consumption.

43.      HID Ballasts perform two functions in the operation of HID lamps.  First, they provide a surge of power to the lamp when it is first turned on to help establish the arc between the two electrodes.  Second, once the lamp is running, the ballast regulates the amount of

electricity which flows to the HID lamp, so that the light produced is steady, without flickering or fading.

44.     HID Ballasts are installed as both original equipment in new cars, and as replacements for damaged or worn out HID Ballasts in existing cars.

45.     Much of the original equipment business consists of sales to automobile manufacturers, who are direct purchasers of HID Ballasts.

46.     Additionally, HID Ballasts are purchased by component manufacturers, like Plaintiff herein, who then sell the HID Ballasts to automobile manufacturers as components of larger products, such as headlight assemblies.

47.     The typical purchase of HID Ballasts starts with a request for quotation by the automobile or component manufacturer, years in advance of the need for the product.  Once a quoted price has been accepted, the HID Ballast will typically continue to be supplied for the life of the automobile model for which the part is specified.

48.     The structure of the HID Ballasts market makes it particularly conducive to price fixing and market allocation.  The HID Ballasts market exhibits many of the qualities that facilitate collusion and other improper business behavior, including: (1) substantial barriers to entry; (2) inelastic demand; and (3) opportunities to conspire.  Together, these characteristics vastly increase the feasibility of anticompetitive conduct in the HID Ballasts industry.

49.     There are substantial barriers to entry into the market for HID Ballasts.  A new entrant into this market faces significant start-up costs, which include investments in plants, machinery, distribution infrastructure, a skilled labor and sales force, and research and development.  The strong pre-existing relationships between market players create an additional

deterrent to potential new entrants.  Moreover, the minimum efficient scale of HID Ballasts production is large, discouraging new entrants into the market.

50.     The demand for HID Ballasts is highly inelastic because there are no close substitutes.  Collusion is therefore facilitated, because customers cannot readily substitute other products in response to a price increase.  Thus, producers can raise prices to supra-competitive levels without significant loss of business.

51.     Because HID Ballasts are essential components in various products and are not easily substitutable, Class Members were forced to purchase HID Ballasts at supra-competitive prices throughout the Class Period.

52.     As more fully set forth below, Defendants and their co-conspirators had many opportunities to collude, including at industry or trade meetings, distribution-organized events, and in connection with industry-wide campaigns to purportedly address product quality concerns.

**DEFENDANTS' ANTITRUST CONSPIRACY**

**United States Government Investigation**

53.     An antitrust investigation of the market for HID Ballasts and other auto parts has been taking place for some time in the United States.  To date, the United States' investigation has led to numerous guilty pleas.

54.     On January 30, 2012, Defendant Denso pleaded guilty to a two-count Information issued by the Antitrust Division of the United States Department of Justice (DOJ) (the "Denso Information").  The Denso Information alleged that during a relevant period of about ten years, through at least 2010, Denso participated in a conspiracy with other persons and entities engaged in the manufacture and sale of ECUs (electronic control units) and HCPs (heater

control panels).  Both ECUs and HCPs are auto parts, like HID Ballasts, and Denso's website confirms that the company also manufactures HID Ballasts.

55.     On August 5, 2013, Defendant Panasonic pleaded guilty to a three-count Information issued by the DOJ ("the Panasonic Information").  Count Three of the Information concerned the global conspiracy "to rig bids for, and to fix, stabilize, and maintain the prices of, automotive HID ballasts . . ."

56.     According to the plea agreement, "[Panasonic], through its employees, including general managers and other employees, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of automotive HID ballasts, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of, automotive HID ballasts sold to Honda, Mazda, and Nissan in the United States and elsewhere."

57.     On November 6, 2013, Defendant Mitsubishi pleaded guilty to a single count DOJ Information for a Conspiracy to Restrain Trade (the "Mitsubishi Information").

58.     Paragraph 4(a) of the plea agreement between Mitsubishi and the DOJ describes a relevant period during which "the defendant was a manufacturer of various automotive parts as defined in Paragraph 13."  The list referred to in Paragraph 13 includes "high intensity discharge ballasts (HID)".  Paragraph 4(b) of the plea agreement between Mitsubishi and the DOJ states that "[d]uring the relevant period, the defendant, through its officers and employees, including high-level personnel of the defendant, participated in a conspiracy among major automotive parts manufacturers, the primary purpose of which was to rig bids for, and to fix, stabilize and maintain the prices of, certain automotive parts sold to Ford Motor Company, General Motors LLC, Chrysler Group LLC, Fuji Heavy Industries Ltd., Nissan Motor Company

Ltd., Honda Motor Company Ltd., Toyota Motor Corporation and certain of their subsidiaries in the United States and elsewhere."

59.       On November 27, 2013, Defendant Stanley pleaded guilty to a single count DOJ Information for a Conspiracy to Restrain Trade (the "Stanley Information").

60.       Paragraph 4(a) and (b) of the plea agreement between Stanley and the DOJ defines a relevant time period, during which the Defendant "through its employees, including high-level personnel of the defendant, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of automotive HID lamp ballasts, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of, automotive HID lamp ballasts sold in the United States and elsewhere."

61.       On January 16, 2014, Defendant Koito pleaded guilty to a two-count DOJ Information (the "Koito Information"), the second count of which defines a relevant time period during which the Defendant "through its employees, including high-level personnel of the defendant, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of automotive HID lamp ballasts, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of, automotive HID lamp ballasts sold in the United States and elsewhere."

**Opportunities To Conspire**

62.       Prior to and during the Class Period, high-level representatives of Defendants (and/or their parents, subsidiaries, and affiliates) had opportunities to, and frequently did, communicate with each other.

63.       In the Panasonic Information, the U.S. Department of Justice charged Panasonic and its co-conspirators with:

a.  participating in meetings, conversations, and communications to discuss the bids and price quotations for HID Ballasts customers in the United States and elsewhere,

b.  agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to those customers,

c.  agreeing, during those meetings, conversations, and communications, to allocate the supply of automotive HID Ballasts sold to automobile manufacturers in the United States and elsewhere on a model-by-model basis,

d.  agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by those customers,

e.  submitting bids, price quotations, and price adjustments to those customers in accordance with the agreements reached,

f.  selling automotive HID Ballasts to Honda, Mazda, and Nissan in the United States and elsewhere at collusive and non-competitive prices,

g.  accepting payment for automotive HID Ballasts sold to Honda, Mazda, and Nissan in the United States and elsewhere at collusive and non-competitive prices,

h.  engaging in meetings, conversations, and communications in Japan for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme, and

i.  employing measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection.

16

64.     Substantially similar language is also contained in the Denso Information, Stanley Information, Koito Information and Mitsubishi Information.

65.     The above referenced meetings, conversations, and communications provided ample opportunity for Defendants and their co-conspirators to coordinate pricing, sales, and market allocation with respect to HID Ballasts sold in the United States and in other parts of the world.

**FRAUDULENT CONCEALMENT**

66.     Defendants and their co-conspirators affirmatively and wrongfully concealed their anticompetitive conduct from Plaintiff and the members of the Class from at least July 1, 1998 through July 18, 2013, when the antitrust investigation of HID Ballasts manufacturers in the United States became public.  During that time, Plaintiff and the Class did not learn or discover the operative facts giving rise to their claims, despite due diligence.  Thus, Defendants' fraudulent concealment tolled the statute of limitations through at least July 18, 2013, when the Panasonic Information revealed for the first time the existence of the global conspiracy to rig the pricing of HID Ballasts.

67.     Defendants and their co-conspirators' wrongful conduct was carried out in part through means and methods that were designed to avoid detection, and which, in fact, successfully precluded detection.

68.     For example, in the Panasonic Information, it says that Panasonic and its co-conspirators "employ[ed] measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection."  Substantially similar language is contained in the Denso Information, the Mitsubishi Information, the Stanley Information, and the Koito Information.

69.     Despite due diligence, Plaintiff had no knowledge of Defendants' and their co-conspirators' unlawful contract, combination, or conspiracy.

70.     Plaintiff received pricing information from one or more of Defendants or their co-conspirators.  Plaintiff had no way to know that those prices were artificially inflated, because Defendants' conspiracy alleged herein was inherently self-concealing.

71.     Plaintiff did not and could not have discovered Defendants and their co-conspirators' unlawful contract, combination, or conspiracy at any earlier date, despite due diligence.  Defendants and their co-conspirators undertook affirmative acts of concealment of their contract, combination, or conspiracy, including their attendance at secret meetings, meeting at remote locations, using code names to refer to themselves and co-conspirators, making misrepresentations to Plaintiff and the Class of the reasons for the prices charged, and engaging in secret conversations concerning the price-fixing of HID Ballasts.

## ANTITRUST INJURY

72.     Defendants' conspiracy caused injury to Plaintiff and members of the Class by suppressing price competition among HID Ballasts manufacturers, thereby depriving all direct purchasers of HID Ballasts of the benefits of a competitive market, and resulted in the setting of prices of HID Ballasts at artificially high levels.

73.     As a direct result of Defendants' conspiracy, Plaintiff and members of the Class have been injured in their business or property in that they paid more for HID Ballasts than otherwise would have been the case in a competitive market.

74.     Defendants and their co-conspirators knew and intended that their pricing actions regarding their sales of HID Ballasts would have a direct impact on prices for HID Ballasts for all direct purchasers of HID Ballasts throughout the United States.

## CLAIM FOR RELIEF

**(Sherman Act Section 1 – Horizontal Price-Fixing Against All Defendants)**

75.      Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

76.      During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, combination or conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for HID Ballasts sold in the United States, and/or to allocate markets and customers for HID Ballasts sold in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

77.      The contract, combination or conspiracy resulted in an agreement, understanding or concerted action between and among Defendants and their co-conspirators in furtherance of which Defendants and their co-conspirators fixed, raised, maintained, or stabilized prices, and/or allocated markets and customers, for HID Ballasts sold in the United States.  Such contract, combination, or conspiracy constitutes a *per se* violation of the federal antitrust laws.

78.      Defendants and their co-conspirators succeeded in fixing, raising, maintaining, and stabilizing the prices, as well as allocating markets and/or customers for HID Ballasts sold in the United States during the Class Period.

79.      For purposes of formulating and effectuating their conspiracy, Defendants and their co-conspirators did those things they contracted, combined, or conspired to do, including:

     a.      Restraining trade or commerce by allocating customers or markets, and otherwise fixing, controlling or maintaining, at artificial and supra-competitive levels, the prices at which HID Ballasts were sold in the United States;

    b.      Depriving direct purchasers of free and open competition;

    c.      Selling HID Ballasts to direct purchasers in the United States at supra-competitive prices; and

    d.      Employing measures to conceal the true nature of their unlawful conduct from Plaintiff and other members of the Class in furtherance of the conspiracy.

80.      As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiff and the other members of the Class have been injured in their businesses and property in that they have paid more for HID Ballasts than they otherwise would have paid in a competitive market.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment on its behalf and on behalf of the Class herein, and respectfully requests the following relief:

A.      That the Court determine that this action may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure, with Plaintiff as the designated Class Representative and its counsel as Class Counsel;

B.      That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators as alleged in this complaint, be adjudicated and decreed a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. §1;

C.      That Plaintiff and members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against Defendants in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. §15(a);

D.      That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein;

E.      That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees, as provided by law;

F.      That Plaintiff and members of the Class be awarded pre-judgment and post-judgment interest in accordance with law; and

G.      That Plaintiff and members of the Class receive such other or further relief as may be just and proper.

## **JURY TRIAL DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

DATED:  July 17, 2017

/s/ David H. Fink_____
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK + ASSOCIATES LAW
38500 Woodward Avenue, Ste. 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com
nfink@finkandassociateslaw.com

Interim Liaison Counsel for the Direct
Purchaser Plaintiffs

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone: (215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com


Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000
ghansel@preti.com
rweill@preti.com
msmith@preti.com


Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
  & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500
skanner@fklmlaw.com
wlondon@fklmlaw.com
mmoskovitz@fklmla.com

Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs

M. John Dominguez
David A. Young
COHEN MILSTEIN SELLERS
  & TOLL PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 833-6575


Matthew W. Ruan
COHEN MILSTEIN SELLERS
  & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797

Solomon B. Cera
Thomas C. Bright
Pamela A. Markert
CERA LLP
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone: (415) 777-2230

Counsel for Plaintiff